# STATE OF UTAH, RESPONDENT, *v.* BRIGHAM SPENCER, APPELLANT.

LARCENY—ELECTION—EXCEPTIONS TO CHARGE—CORROBORATION OF ACCOMPLICE—PROOF OF EXAMINATION—ARGUMENTS OF COUNSEL.

1. Defendant and others entered into a conspiracy to steal cattle on the range, and were charged with the larceny of several head of cattle belonging to different persons, in one count of the information. The cattle were picked up on the range and driven to a corral, and there claimed by the defendant, and driven away in accordance with the previous conspiracy to steal them. At the trial, evidence was given of the taking of one roan steer from the corral shortly after others were taken. After the people had rested their case, defendant's counsel requested the court to require the prosecution to elect whether they would rely for conviction ʼupon the charge of larceny of the roan steer or the other stock named in the information. *Held,* that election cannot be required on the ground that distinct offenses are charged, when such offenses are committed by the same acts and grow out of—one and continuous—the same transaction, and the same testimony must be required for conviction; but where it clearly appears that separate and distinct offenses are intended to be charged in an information, or proved on the trial, the proper way in which an objection can be rendered available is by motion to quash before the defendant has pleaded and the jury sworn, or by demurrer, or by calling upon the prosecution to elect in the subsequent proceedings in the case.

2. Exceptions taken to the charge of the court, but which do not appear on the record, cannot be considered.

3. The statute (Comp. Laws Utah 1888, § 5049) requiring the corroboration of the evidence of an accomplice does not require that such a witness should be corroborated in respect to every material fact, but only in respect to such of the material facts as constitute a necessary element in the crime charged, and the corroborating evidence must of itself, and without the aid of

the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the offense. It need not be sufficient of itself to establish defendant's guilt, but it must tend in some degree to implicate and connect the defendant with the commission of the offense charged. This evidence may be slight, yet the requirements of the statute are fulfilled if it be corroborating evidence.

4. It is not necessary that proof be offered at the trial that the accused was bound over or committed by a committing magistrate for the offense charged. When called upon to plead, if he make no objection that such examination has not been had or waived, he must be understood to admit that it has been had or waived, or that he now intends to waive it. Having waived this objection, it is too late to review it on appeal. The statute (Sess. Laws 1896, p. 98) simply requires the fact of the examination to be recited in the information.

5. A stat-ment by the prosecuting attorney to the jury that, " after investigating this case, I have become convinced of his guilt, and that he [defendant] ought to be prosecuted and brought to justice," is improper, but not reversible error, when not called to the attention of the court at the time it was made, and not until after the case was submitted to the jury and they had retired, and when the instructions of the court to the jury were to the effect that they should not consider the arguments of counsel, only so far as they have confined their arguments and discussion of the case as testified to by the witnesses, and that they must make up their minds from the testimony, and not from the statements of counsel, etc.

( No. 796.   Decided June 2, 1897.)

Appeal from the Sixth district court, Garfield county. Hon. W. M. McCarty, *Judge.*

Brigham Spencer was convicted of larceny and appeals. *Affirmed.*

*D. D. Houtz* and *M. M. Warner,* for appellant.

*H. C. Bishop, Att'y Gen.,* and *Benner X. Smith,* for respondent.

On the question of election counsel for the state cited: *Anderson* v. *People,* 7 N. E. Rep. 265; *Herman* v. *People,* 131 Ill. 594; Note to 9 Lawyers' Reports, Anno. 182; *Thompson* v. *State,* 22 S. W. Rep. 979; *Green* v. *State,* 17 S. W. Rep. 262; *State* v. *Hodges,* 26 Pac. Rep. 676; *Armstrong* v. *State,* 13 S. W. Rep. 864; *People* v. *McCarty,* 18 N. E. Rep. 128; *State* v. *Shores,* 7 S. E. Rep. 421, note; *Robinson* v. *State,* 4 So. Rep. 774; *Black* v. *State,* 3 So. Rep. 814; *State* v. *Mueller,* 38 N. W. Rep. 691; *Corley* v. *State,* 7 S. W. Rep. 255; *Roberts* v. *People,* 17 Pac. 637.

MINER, J.:

Defendant Brigham Spencer, impleaded with Jacob Reese, was jointly informed against by the prosecuting attorney of Garfield county for the larceny of cattle alleged to belong to different parties. Appellant, Brigham Spencer, was tried alone. The complaint was dismissed against defendant Davis, and he was used as a witness upon the trial. It appears that there was a general round-up of cattle to be had at the "gate" in Garfield county, and that many cattlemen, including the defendant, went upon the range and gathered up their cattle, and drove them to the corral or gate, and held them there about a week, and until the round-up was over and each owner had selected his stock from the rest of the herd gathered there. Just prior to this round-up, it was agreed between the two defendants and Davis that as Spencer had been upon the range for years, and knew all the cattle, while Reese and Davis had been in the penitentiary, and were not so well acquainted, Spencer should point out the estrays gathered there at the round-up to Davis, and that Davis should take the estrays so pointed out, and sell them, and divide the proceeds with the other parties. The estrays were brought into the cor-

ral by defendants and Davis, with other cattle, in accordance with the conspiracy agreed upon between them. At the round-up the cattle described in the information were pointed out by Spencer to Davis as estrays, and Davis, with the other defendants, cut them out from the herd in the corral, and drove them to the corral of defendant's brother, and these cattle were afterwards sold along with cattle belonging to defendant's brother. · One witness testified that the roan steer described in the information was taken about a week after the others were taken. Whether this testimony refers to the time this steer was brought into the corral or taken from the corral, does not clearly appear. Other witnesses place the pointing out of the estrays by Spencer, and the taking of them away from the corral by Davis, at about the same time. After the people had rested their case, defendant's counsel requested the court to require the prosecution to elect whether they would rely for conviction upon the charge of larceny of the roan steer, or of the other stock named in the information. The request was denied, and defendant alleges error upon this ruling. The defendants were charged with the larceny of several head of cattle belonging to several different persons, in one count in the information, on the 26th day of May, 1896. The proofs show that the defendants and Davis entered into a conspiracy by which two of them should drive to a certain corral, at the time of the general round-up, all their stock, including all the estrays that could be found, and that, when the cattle were being cut out by different owners, the defendant Spencer, who was well acquainted with all the estrays on the range, should point them out, and that such estrays should be claimed and taken away by Davis in the alleged interest of parties who ran their stock on the Panguitch range; that, after the estrays were selected, they should

be sold, and the proceeds divided betweeen the conspirators. In pursuance of this understanding, the cattle in question were taken by the defendants and sold. This being so, it is not important whether the roan steer was taken away at the same time with the other cattle or not. The stealing of all of the cattle was a part of one and the same transaction, combination, and conspiracy on the part of the defendants and Davis, in furtherance of their common object and agreement to steal all the estrays they and others would place in the corral. The cattle were driven to the corral from different quarters, and then selected by the defendants, stolen, driven away, and sold. Election cannot be required on the ground that distinct offenses are charged, when such offenses are committed by the same acts and grow out of the same transactions, and the same testimony must be required for a conviction; but, where it clearly appears that separate and distinct offenses are intended to be charged in an information, the proper way in which the objection can be rendered available is by motion to quash before defendant has pleaded and the jury sworn, or by demurrer or by calling upon the prosecution to elect in the subsequent proceedings in the case. *People* v. *McKinney*, 10 Mich. 95; 1 Chit. Cr. Law, 248; *U. S.* v. *West*, 7 Utah 437. In the case of *People* v. *McKinney*, 10 Mich. 95, the court said: "As a general rule, in cases of felony, when it clearly appears, from the indictment or otherwise, that several entirely distinct felonies are intended to be charged and proven, the court will, in its discretion, either quash or compel the prosecutor to elect; and the same course is sometimes taken in misdemeanors, where several offenses in no way connected are charged. But there is nothing technical in the rule, and in the exercise of this discretion the court will not be governed simply

by the question whether several different offenses, in point of law, are charged and intended to be proved, but mainly, as a general rule, by the consideration whether the trial of the several offenses would involve the proof of substantially different transactions, and thereby tend to confuse the defendant in his defense, or deprive him of any substantial right. And therefore, where the several offenses charged, though distinct in point of law, spring out of substantially the same transaction, or are so connected in their facts as to make substantially parts of the same transaction or connected series of facts, the defendant cannot be prejudiced in his defense by the joinder, and the court will neither quash nor compel an election. Such would seem to be the principle of the general rule to be deduced from the cases." 1 Chit. Cr. Law, 252, 254, and note; Rosc. Cr. Ev. 231, 232; *People* v. *Sweeney*, 55 Mich. 586; *People* v. *Johnson,* (Mich.) 45 N. W. 1119; *State* v. *Larson,* (Iowa) 52 N. W. 539; *People* v. *Goodhue*, 94 Ill. 37.

Appellant's counsel, in his brief, makes some objections to the charge of the court; but as no exceptions were taken to the charge, as appears from the record, we cannot consider these objections.

Defendant also assigns as error the fact that the testimony of Davis, the accomplice, was not corroborated by the testimony of any other witness, as provided by section 5049, Comp. Laws Utah 1888. This section reads as follows: "A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Under this provision of

the statute, the corroborating evidence must of itself, and without the aid of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the offense. This corroborating evidence need not be sufficient of itself to establish the guilt of the defendant, but it must tend in some degree to implicate and connect the defendant with the commission of the offense charged. It may be slight, and entitled to but little consideration; nevertheless the requirements of this section are fulfilled if there be any corroborating evidence which of itself tends to connect the defendant with the commission of the offense. The statute does not require that such witnesses should be corroborated in respect to every material fact, but only in respect to such of the material facts as constitute a necessary element in the crime charged. *People* v. *Thompson,* 50 Cal. 480; *People* v. *Ames,* 39 Cal. 403; *People* v. *Josselyn,* 39 Id. 343; *U. S.* v. *Kenshaw,* 5 Utah, 618. Upon an examination of the record, we are of the opinion that the testimony of the accomplice was sufficiently corroborated by the facts and circumstances shown, and that the court correctly instructed the jury on that subject.

Defendant's attorney also alleged as a ground of error that no proof was offered upon the trial that the defendant was ever duly bound over or committed by a committing magistrate for the offense charged. The information recites the fact that the accused was duly held to answer the charge made by a committing magistrate, in compliance with chapter 23, p. 98, Sess. Laws 1896. The preliminary examination before a magistrate, under the statute, was designed, to some extent, to accomplish the purpose of a presentment by a grand jury under the law as it existed before, in protecting a party against being subjected to the indignity of a public trial for an offense be-

fore probable cause has been established against him by evidence under oath. The law never sanctioned putting any one on his trial until probable cause has been made to appear by responsible testimony. The defendant may, however, waive his right to a preliminary examination before an information is filed against him. Section 1 of the act referred to permits him to do so, with the consent of the state. He may make this waiver as well when called upon to plead to the information as when brought before the examining magistrate. If the defendant intends to insist upon the want of an examination, and that he has not been bound over by a committing magistrate, he should do so by motion to quash the information, or by other appropriate motion, or demurrer before plea. A motion to quash is the more simple course. If, when called upon to plead, he makes no objection that such examination has not been had or waived, he must be understood to admit that it has been had or waived, and that he now intends to waive it. Having waived this objection, it is now too late to review it. *Washburn* v. *People,* 10 Mich. 372; *People* v. *Jones,* 24 Mich. 218; *Morrissey* v. *People,* 11 Mich. 327. The statute does not require the fact of an examination to be averred in the information. It simply requires it to be recited in the information. This fact, if recited, does not constitute any of the elements of the crime required to be averred or charged in the information by section 2 of the act referred to. It is not a matter which goes to the merits of the trial, but to the regularity of the previous proceedings. The statute does not require proof of these facts to be produced upon the trial of the case. *Washburn* v. *People,* 10 Mich. 372. Upon a review of the record, we do not find that this question was raised in the trial court. It is raised for the first time in this court, so far as appears

from the abstract, and, but for other considerations, would not be entitled to the consideration of the court.

Appellant's counsel also contend that the court erred in permitting the attorney for the state, in his argument to the jury, to use the following language: "I am not prosecuting this case to satisfy any feeling I may have in the case for or against any one, but, after investigating the case, I have been convinced of his guilt, and that he ought to be prosecuted and brought to justice." Counsel for the appellant objected to this statement, but it appears from the record that the trial judge did not hear the objection nor the remarks of counsel, and it was not called to his attention till after the jury had retired; the court being engaged at the time in the preparation of his instructions, and in an examination of requests to charge. The remarks of the district attorney were clearly improper. It is the duty of the public prosecutor to see that an accused person has a fair trial, so far as he has power to control it, and it is also his duty to use his best endeavors to convict the guilty party by fair means. In the discharge of this duty, great zeal is commendable, yet his methods must be such as comport with a fair administration of justice. It is improper for a prosecuting officer to make statements to the jury, of facts, as of his own knowledge, which have not been introduced in evidence under the sanction of an oath, relating to the material issues in the case. *People* v. *Quick* (Mich.), 25 N. W. 302. It was also the duty and right of defendant's counsel to bring such statement to the attention of the court. Had he done so at the time, the court, doubtless, would have corrected it. The court charged the jury generally with reference to statements of counsel as follows: "You are instructed that you should not consider the arguments of counsel in the case, only so far as they have confined their

arguments and discussion of the case as testified to by the witnesses. You are to make up your minds from the evidence, and not from statements of counsel. You are instructed only to consider the arguments in so far as they will assist you in arriving at the truth or falsity of the charge based on the evidence in the case, and you should not, in considering this case, adopt as your own the conclusion of counsel on either side, but are to draw your own conclusions and make up your minds from the evidence in the case." The charge of the court was fair, and naturally tended to correct any erroneous impressions created by the remarks of the county attorney. Upon the whole record, we find no reversible error. The judgment of the court below is affirmed.

Zane, C. J., and Hart, District Judge, concur.