Grafton,
No. 4280.

STATE *v.* VERNON CHARETTE.

Argued February 3, 1954.

Decided February 18, 1954.

478

*Louis C. Wyman,* Attorney General, *Warren E. Waters,* Deputy Attorney General and *Charles F. Tesreau,* county solicitor (*Mr. Waters* orally), for the State.

*Paul F. Mullavey* and *Frederic W. Harrington, Jr.* (*Mr. Harrington* orally), for the respondent.

KENISON, C. J. The respondent was charged with the crime of burglary (R. L., *c.* 453, *s.* 2) by an indictment which substantially followed the language and form set forth in Justice and Sheriff (1931 *ed.* at page 359), and which has been used in this state for at least three-quarters of a century. The indictment did not allege the value of the articles or money intended to be stolen but this has not been considered necessary to the validity of such an

indictment since *State* v. *Fogg*, 92 N. H. 308. A motion to quash a similar indictment was held to have been properly denied in *State* v. *Skillings*, 98 N. H. 203, 207, and that case is controlling here. The common law offense of burglary has been changed by our statute to include not only breaking and entering with intent to commit a felony but also to include cases where the intent is "to commit any larceny." R. L., c. 453, s. 2; *State* v. *Fogg, supra.* Another statutory extension of the crime of burglary appears in R. L., c. 453, s. 7, which considers cottages, cabins and camps to be dwellings although they may be "used and occupied only a portion of the time." Consequently the cabin occupied by the Hudons and the Langs was correctly described as a "dwelling-house" in the indictment. The motion to quash the indictment was properly denied by the Presiding Justice.

The evidence disclosed that the defendant and his brother, who was armed with a pistol, entered the Hudon's cabin wearing rubber masks. After entering the cabin, Mr. Hudon was bound and demand was made of Mrs. Hudon for the combination to the safe and the key to the restaurant. She told them the combination to the safe and pursuant to the demand of the respondent and his brother obtained a piece of paper and wrote it out. This paper was taken by the defendant's brother but the key was not obtained since Mrs. Hudon stated that she did not have it in her possession. The respondent contends that he should be discharged since the intent must be to commit larceny within the cabin or dwelling-house and in this case the evidence disclosed that the intent was to commit larceny in the restaurant which was some one hundred yards from the cabin. This proposition was accepted by Blackstone and by the early common law decisions which quoted him as an authority. 4 Bl. Com. 225. *State* v. *Sampson*, 12 S. C. 567. It was then considered that the larceny committed or intended to be committed must be within the dwelling-house itself or some other building within the same common fence or enclosure which was defined as the curtilage. Clark & Marshall, Crimes, s. 406 (1952).

The present day test, however, is much broader. Anno. 20 A. L. R. 234, 236. Outbuildings which are directly and intimately connected with the habitation and in proximity thereto are entitled to the same protection as the dwelling-house itself. See 9 Am. Jur., Burglary, s. 24. Such outbuildings have the same status as dwelling-houses within the meaning of the law of burglary. The

statute under which the respondent was indicted carries the same penalty whether the breaking and entering occurs in a dwelling-house or in a "shop" or in a "store." R. L., c. 453, s. 2. The restaurant in this case was a shop or store within the meaning of that statute. The breaking and entering of the cabin with the intent to commit larceny .at the nearby restaurant, which was an integral part of the Indian Head Village, was burglary of a dwelling-house within the meaning of our statutes. R. L., c. 453, ss. 2, 7. The legal effect is the same whether the respondent broke and entered the dwelling-house or cabin with the intent to steal in the restaurant or had broken into and entered the restaurant with intent to steal in the dwelling-house or cabin. While no cases directly in point have come to our attention, the conclusion is not doubtful.

The result would be no different in this case even if we assumed that there must be an intent to commit the larceny within the dwelling-house or cabin. The intent to commit larceny within the cabin was readily inferable from the fact that a key to the restaurant was demanded and a piece of paper containing the safe combination was taken from the occupants of the cabin. There is nothing in the Court's charge to the jury which conflicts with this construction of the burglary statute.

The burglary was accompanied by a "scuffle involving gun-play," the killing of the respondent's brother and "the wounding of Joseph Hudon by Lang." Objection was made to testimony and evidence relating to the shooting on the ground that it involved other crimes. This evidence was admissible as a link in the chain of circumstances which was an immediate and integral part of the burglary. State v. Peters, 90 N. H. 438, 440. Since the respondent and his brother wore rubber masks and could not be identified by their countenances and since no witness could describe what happened without detailing the shooting, it cannot be maintained that this evidence was irrelevant or tended to show totally disconnected crimes. "If several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others, evidence of any one or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme." Underhill, Crim. Ev. s. 182. A similar objection was made to the testimony of the

ballistics expert. This evidence was likewise admissible since it was evidence of "other criminal acts which are an inseparable part of the whole deed." I Wig. Ev. (3rd *ed.*) *s.* 218. *State* v. *Boswell,* 73 R. I. 358; *State* v. *Anderson,* 10 Wash. (2d) 167. If it may be said that this evidence was prejudicial to the respondent, it was inherent in the circumstances of the case. *State* v. *LaPage,* 57 N. H. 245, 289.

*Exception overruled.*

All concurred.